Ilui'i’iN, C. J.
 

 In January, 1844, the plaintiff and defendant entered into a treaty for the exchange of their tracts of land, lying in Cabarrus county; that of the defendant being represented by him, and understood by the plaintiff, to contain two hundred acres, and that of the plaintiff being represented by him, and understood by the defendant, to contain 250 acres. The bill states that each party understood that he was to convey the quantity thus represented, and that- he was to convey no more : that no survey was made of the tract which the plaintiff had owned, in order to ascertain the quantity it contained, because one Black had, a short time before the negotiation, made a survey and plat of it, and calculated the quantity, whereby it appeared 'to be ascertained, that it contained 250 'acres; and that each party, believing the survey and calculation to be cor
 
 *223
 
 rect, contracted upon the faith thereof, and dispensed with any further survey: — That each party, in the course of the treaty, regarded the quantity in the two tracts as a material part of the contract; and that the land of the plaintiff would have been surveyed, under the agreement, in Crder* to ascertain the quantity, if he and the defendant had not bodi relied on the correctness of the recent survey by Black* That upon that basis the negotiation was closed, by the agreement of the defendant to convey to the plaintiff his tract of 200 acres, and of the plaintiff, in consideration thereof, to pay to the defendant the sum of 01] 00, and also, to convey to him his tract of 250 acres; and that, on the 26th of January, 1844, the parties mutually executed obligations, with conditions for the conveying of the Said tracts of land. That given by the plaintiff is exhibited, and the condition is, “that he shall execute a good deed for two hundred and fifty acres of land, which he now lives on,” The bill further states, that on the 1st of February, 1844, the parties respectively made conveyances; and that the deed ffom the plaintiff described the land by metes and bounds, according to Black’s survey and plat, and as
 
 “
 
 containing two hundred and fifty acres,” as therein set forth — > which appears to be true by the deed, as exhibited by the defendant, The bill then states, that since the- execution ' of the deed, it had been discovered, upon a re-survey, made with skill and accuracy, of the land conveyed by the plaintiff, and by a correct calculation, that there are two hundred and ninety-three acres contained within the boundaries of Black's survey and' the plaintiff’s deed; and that, upon the discovery being made/ the plaintiff applied to the defendant to pay him for the excess of forty-three acres, at an average of the value to be put on the whole tract, or to re-convey to the plaintiff that quantity of an average value
 
 p
 
 but that the defendant refused to do either. The prayer is, that the defendant may be decreed to do the one or th«-other, and for general relief. The answer states the facts
 
 *224
 
 to be, that the plaintiff proposed exchanging the plantation on which he lived for the land owned by the defendant; and the plaintiff undertook to show his tract to .the defendant ; and they walked over it together, plaintiff pointing out the several corners, and lines, and alleging that the land thus shown contained 250 acres; and, as evidence of that, fact, he exhibited to the defendant a plat of the same, made-by Black for the plaintiff, a short time previous : That, after thus examining the land, the defendant concluded to, bargain on the terms proposed, and without any further survey, relying upon the accuracy of the one made by Black : That bonds for title were then executed, and the deed afterwards made by the plaintiff according to the metes and bounds shown to the defendant and set forth in Black’s plat. The answer denies, that the particular number of acres in the tract constituted any part of the trade and states, that the plaintiff asserted, that the tract contained 250 acres, and the defendant was willing to take it for that number, according to the metes and bounds, and if there was any mistake as to the number of acres, he expected to be bound by it, and the plaintiff should be also; and the defendant claims all the land conveyed by the deed. The answer states, that some time after the trade was completed, the defendant had the land processioned, and the survey of the processioner made the contents 293 : That he was unable to state whether that, survey was accurate, or not; but believing that it might, probably, be wrong, he would not have it returned. The answer further states, that the defendant had made improvements on different parts of the land, believing that, in justice, he would not be deprived of any part of it. Under a direction of the Court, a survey was made, and the quantity reported to be 298 acres, and neither party excepted to the report. The proofs are, that, upon the concluding of the contract, the parties caused a survey to be- made of the land of the defendant, and it was found to contain 211 aciegj
 
 *225
 
 avid that the 11 acres were taken off as a surplus, and the defendant conveyed to the plaintiff only the quantity of 200 aerees, and took the plaintiff’s deed for his tract, as containing 250 acres. In March or April following, it was suggested to the defendant by a neighbor, that there were not 250 acres in the tract conveyed to him, and thereupon he said he would have the land processioned, and the lines and quantity legally ascertained, in order to have the quantity made up, if it should turn out there was a deficiency. The tract in question had been laid off by Black to the plaintiff, as a part of a larger tract descended from his father, and his mother was residing on the residue of the tract. The defendant gave notice to the plaintiff, his mother, and a brother, of his intention to procession his land, and on the day appointed, the plaintiff and his brother met the defendant on the premises, and the surveyor proceeded with the procession. While it was in progress, the parties expressed different opinions as to the quantity, and in the course of the conversation it was verbally agreed between them, that, if there should prove to be a deficiency, it should be made up out of the old tract, by running a line parallel to that between the two tracts, and, if there was a surplus, it should be taken off, by running a parallel line on the other side. After the survey was completed, and the calculation of quantity ascertained, the surplus was found to be so large, that, in laying it off, as had been agreed, some of-the defendant’s houses would be included in it. The defendant thereupon said, the surplus should not be taken from that part of the tract, and directed the surveyor to lay it off on the opposite side of the tract. This occurred while the plaintiff was at his dinner at his mother’s; and upon his return to the defendant’s, for the purpose of knowing the result of the calculation, he found the surveyor engaged, under the defendant’s direction, in laying off 43 acres for the plaintiff on the other side of the tract, and the plaintiff objected to taking it there, and insisted on its being laid off
 
 *226
 
 ■adjoining the other part of his father’s land, as the parties had agreed in the morning. The defendant refused, and tha parties then had some dispute on the point, when the defendant stopped the surveyor, and told the plaintiff, if he got the land where he wanted it, he wTould get it by law ; and the matter was thus ended. The defendant was required to produce the obligation given by him to the plaintiff, which he took up when he made a deed to the plaintiff; and he stated that he could not do so, because he is unable to find it, and believes that, thinking it then of no value, he destroyed it upon taking it up, He admits, however, that he wrote both obligations, and that they were verbatim alike, except that the plaintiff’s bond mentioned the locality of the land which his deed afterwards set forth. It is now to be taken as certain, that the tract of land conveyed by the plaintiff to the defendant contains 298 acres — being 48 acres more than either party believed at the time of the Contract. The question is, what effect that is to have on the rights of the parties. It ought to have none, if they dealt for the tract as a whole, whether containing a greater Or less quantity. It is admitted that the circumstances, that in' the course of the treaty an inquiry or representation Was made as to the quantity, or that the written articles or the conveyance had no terms qualifying the statement of the quantity, such as “ supposed to contain,” or “ more or less,” are not decisive, that the bargain was not of that character, especially when the sale was not, in terms, by the acre, and, by the agreement, there was to be no survey. For, it may properly influence the mind of one treating for the purchase of a tract of land as a whole, that it has long been reputed, or has been recently computed, on survey, to contain a particular quantity. Yet quantity is an import tant consideration in every sale and purchase ; and it is natural that parties should contract with reference to it, and these ci'rcutnstances may become material with others in cyder to ascertain the true intention of the parties ; and if
 
 *227
 
 quantity clearly appears to have entered essentially into the treaty, and that the parties meant to contract for the land as containing a certain quantity, and not as supposed to contain, it, or thereabouts, and it turn out to be less or more, a Court of Equity, though there be no fraud, ought to relieve either party, upon the ground of surprise and q mistake of all the parties.
 

 The Court entertains no doubt, that in this case the quantities in the tracts exchanged formed an essential ingredient of the treaty, in the view of each party. There is no direct evidence of what passed between them prior to giving their obligations, except what is said about it in the am swer. But the statements in the answer on that part of the transaction, and the terms used in the bonds, raise a fair presumption of the materiality of the quantity, as in fact existing, to the closing the bargain by either party, notwithstanding the subsequent denial in the answer, that the quantity formed a part of the trade, and the defendant’s declaim tion, that he expected to be bound, even if there were a mistake as to quantity. The bonds do not say, that the ob-ligor is to convey his “ tract of land,” containing so many acres, but that the one is to convey 200 acres of land, whereon he lived, and the other, 250 acres, whereon h§ lived, indicating, that the conveyances were to be of'the respective quantities, the vepdee nut being satisfied with less, nor the vendor bound to convey more. But, if that be equivocal, it not only appears in the beginning of the answer, that the plaintiff showed the land, its corners and lines, and said it contained 250 acres, but also that he exhibited the plat of a recent survey, representing it to contain that quantity,
 
 "
 
 as evidence of the fact,” and that the defendant, “relying on the accuracy” thereof, concluded to bargain “ without any further survey.” These seem to be specific admissions, that “the facts,” as to quantity, entered essentially into the negotiation, and that the defendant, at Jeast, would have had that fact ascertained by “ a further
 
 *228
 
 survey,” if ihe one laid before him had not been deemed complete “ evidence of the fact.” If, then, the bond be not so explicit, as to the materiality of the quantity, as to au-thorise the Court to relieve upon the basis of correcting the subsequent deed by the articles, vet there ought to be relief on the basis of a mistake in the articles themselves, which, without opportunity for discovery, ran into the deed executed five days afterwards. If the quantity, as ascertained,
 
 ory
 
 to be ascertained, was not, in the 'contemplation of the parties, of the essence of the contract, why were they so particular as to “the evidence” of the quantity ? Or why would not the defendant, [as he plainly intimates be would not,] have concluded the bargain without a further survey or a stipulation for on'e, if he had not “relied on the accuracy” of Black’s survey and calculation, 'as clearly ascertaining that material fact. Those parts of the answer cannot be explained, so as to rebut that inference from them ; and it is wholly inconsistent with the subsequent statement, that the defendant expected the parties to abide by any mistake as to quantity. Indeed, that statement, in itself, is very extraordinary. Why should the defendant expect to be bound by a mistake, when there had been nothing said about a mistake, or any thing to suggest the probability, that one existed ? The truth is apparent, that each party regarded the quantity as materially affecting 'the value of the two tracts ; and, as to one of them, it was to be ascertained by a survey-, which dispensed with the necessity for another. In fact, however, the surveyor miscalculated the area, which is the only error in the case ; and it seems, under the circumstances, as plain a ground for relief as there would have been, if there had been a stipulation for a survey, in order to find the quantity, and it was made, and a deed executed on the faith of it, and then a wrong reckoning of quantity discovered. In each case the Equity seems as plain as that of correcting a settlement of accounts and bonds givjgn for the balance, upon the discovery of an er
 
 *229
 
 roneous summing up of the amount. These inferences from the language of the articles and the facts, found in the answer, are fortified beyond refutation by the acts of the parties under the contract, as established by the proofs. The obligation of the defendant is admitted to have been similar to the plaintiffs in this respect. Consequently, it contained no stipulation for a survey, but only that the defendant was to 11 make a deed for 200 acres of land, which he lived on.” Yet the parties acted, as if there had been a stipulation in the condition, that the defendant should convey only 200 Acres, and that they should be laid off by admeasurement; for, they actually had the' survey, and the defendant conveyed ,20.0 acres, leaving out the small surplus of eleven acres, as not bargained for. Why was that done? Because, the paities were conscious, that although there Was no such provision in the writings, it was a part of the bargain ; and, therefore, it ought to have been in the articles, and they were willing to act on it. This circumstance evinces, indeed, that the defendant intended no fraud in drawing the articles. But it as clearly evinces, that he had no skill in drawing such instruments, and that he committed gross mistakes by the omission of material stipulations, affecting alike the interest of himself and the plaintiff, as vendors. Then, the motive for having another survey of the land conveyed to him by the plaintiff, and the arrangements between them, while the survey was going on, and the quantity still uncertain, for adjusting their claims — not by way of compromise but upon the ground of right, under the contract, as a deficiency or surplus should appear, form very cogent additional proofs, that the contract was concluded on the basis of quantity. These acts reflect back on the articles and treaty,'and show, if that be not the construction of the articles on their face, that there ought to have been a stipulation in the articles as to quantities, and that it was omitted by mistake. The consequence is, that the plaintiff is not concluded by
 
 *230
 
 ibis deed, because, in the supposed performance of the contract, that also was executed under surprise and when the mistake as to the quantity was unknown. It is one head of the jurisdiction of this Court, to relieve against mistake and surprise, and no case would seem more fit for its exercise than the present. With respect to the particular relief, as neither party wishes to rescind the exchange, and, indeed, the defendant insists on his right to keep all the land included in his deed, and the plaintiff submits to take a fair compensation in money for the excess in quantity, it need not be considered what would be proper, if the parties had acted differently in those respects. As the case is situated the Equity is plain, that a value must be set on the whole tract of 298 acres, as of the time of the contract, and a part thereof be decreed tobe paid to the plaintiff in the proportion of the surplus number of acres to the whole' number, with interest thereon until paid ; and it must be referred to ascertain the sum thus to be paid to the plaintiff. The defendant must pay the costs up to this time.
 

 Pnn Curiam Decree accordingly.